UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:                                                  )          Chapter 15
                                                        )
Basis Yield Alpha Fund (Master)                         )   Case No. 07-12762(REG)
                                                        )
                              Debtor in a Foreign       )
                                        Proceeding.     )
                                                        )

------------------------------------------------------------------------x

DECISION AND ORDER ON MOTION FOR
SUMMARY JUDGMENT SEEKING
RECOGNITION AS FOREIGN MAIN
PROCEEDING

APPEARANCES:

PILLSBURY WINTHROP SHAW PITTMAN LLP
Counsel for the Joint Provisional Liquidators
1540 Broadway
New York, NY 10036
By:     Karen Dine, Esq.
        David Crichlow, Esq. (argued)
        Robyn Schneider, Esq.
        Jerry Hall, Esq.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Counsel for Citigroup Global Markets Limited
One Liberty Plaza
New York, NY  10006
By:     Mitchell Lowenthal, Esq.
        Lindsee Granfield, Esq.


BEFORE:     ROBERT E. GERBER
            UNITED STATES BANKRUPTCY JUDGE

        In this case under chapter 15 of the Bankruptcy Code, petitioners Hugh Dickson,

Stephen John Akers, and Paul Andrew Billingham—the Joint Provisional Liquidators

("JPLs") of Basis Yield Alpha Fund (Master) (In Provisional Liquidation) ("Basis

Yield") in a proceeding in the Cayman Islands—by their petition seek recognition in this

Court of Basis Yield's liquidation in that country as a "foreign main proceeding," under section 1517(b)(1) of the Code, or alternatively as a foreign nonmain proceeding, under section 1517(b)(2). With no objections to recognition having been filed,[1] the JPLs move for summary judgment granting the relief sought under the first prong of their petition, recognition of the Cayman Islands Proceeding as a foreign main proceeding.

The motion raises the issues as to whether failures to object by stakeholders divest the Court of the power to make its own determination as to whether the requirements of Bankruptcy Code section 1517 have been satisfied, and whether a presumption embodied in section 1516 of the Code, discussed below, precludes the Court from considering the actual facts—under circumstances where the JPLs' showing has been strikingly silent and where the few facts that are known raise issues as to their position and make further inquiry appropriate. For reasons set forth below, the Court concurs with the observations of Judge Lifland that recognition under section 1517 is not a rubber stamp exercise.[2] Rather, consistent with Judge Lifland's determination and the views of the drafters of chapter 15 and the UNCITRAL Model Law on which chapter 15 was based, the Court rules that a court engaging in a recognition determination under section 1517 is not bound by parties' failures to object; may, if it is so advised, consider any and all relevant facts (including facts not yet presented); and that the circumstances here make further factual inquiry necessary and appropriate.

Accordingly, summary judgment is denied.

---

[1]    As noted below, one creditor, Citigroup Global Markets Ltd. ("Citigroup"), objected to the form of the proposed recognition order, but did not object to recognition itself.

[2]    *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007) ("*Bear Stearns*"). *See also id.* at 126 ("However, recognition under section 1517 is not to be rubber stamped by the courts. This Court must make an independent determination as to whether the foreign proceeding meets the definitional requirements of sections 1502 and 1517 of the Bankruptcy Code.").

<u>Facts</u>

Basis Yield was incorporated in the Cayman Islands on September 14, 2005 as an exempted limited liability company pursuant to section 193 of the Companies Law (2004 Revision) of the Cayman Islands (the "Caymans Companies Law"),[3] and maintains its "registered office" in that country.[4]  Prior to the commencement of the Cayman Islands Proceeding, Basis Yield invested in a variety of structured credit securities, including asset-backed securities, mortgage-backed securities, collateralized debt obligations, and collateralized loan obligations.

Following the well-publicized volatility in the global credit markets, and particularly the marked rise in sub-prime lending defaults here in the United States, Basis Yield suffered a significant devaluation of the assets in its portfolio.  This devaluation precipitated margin calls from Basis Yield's trade counterparties, which Basis Yield was unable to satisfy.  As a result, Basis Yield was issued several default notices and ultimately its trade counterparties exercised their rights under their respective agreements to seize or sell those assets of Basis Yield that had been subject to repurchase agreements or in which they held security interests.

On August 27, 2007, the shareholders of Basis Yield authorized the filing of a petition to liquidate the fund under the provisions of the Cayman Companies Law.  The shareholders further resolved to apply for the appointment of the petitioners to serve as JPLs for Basis Yield, subject to the supervision of the Grand Court of the Cayman Islands.  On August 28, 2007, that court entered an order appointing the JPLs as Basis Yield's joint provisional liquidators.

---

[3]      Akers Decl. ¶ 2.

[4]      *Id.* ¶ 1.

As set forth in the petition,[5] Basis Yield is registered in the Cayman Islands, and maintains its registered office there.  Basis Yield is the master fund in a master-feeder structure.  Its only "investors" are two feeder funds, Basis Yield Alpha Fund (US) ("BYAF (US)") and Basis Yield Alpha Fund ("BYAF"), both domiciled in the Cayman Islands.[6]  Fortis Prime Fund Solutions (Cayman) Ltd., a Cayman Islands company, serves as the administrator to both Basis Yield and each of its feeder funds.[7]  Pac-Rim Investments, Ltd., also a Cayman Islands company, is Basis Yield's investment manager.[8]  Basis Yield's pre-filing attorneys and auditor, Walkers and Ernst & Young, respectively, are similarly Cayman Islands entities.  The financial books and records of the fund, including the investor register, are currently located in the Cayman Islands.

However, the petition was strikingly silent as to the nature or extent of any business activity Basis Yield conducts (or in the relevant times conducted) in the Cayman Islands.  Likewise, it was silent, *inter alia*, as to whether Basis Yield staffed any employees or managers in the Cayman Islands; whether any of its assets were in the Cayman Islands; and the location from which Basis Yield's funds were in fact managed. The failure to address these matters was commented upon in a submission by creditor

---

[5]    In accordance with the Court's Case Management Order #1, dated Sept. 5, 2007, uncontroverted factual allegations in the petition have been taken as true.  The petitioners also submitted an affidavit supporting allegations made in the petition, providing an additional basis for taking those allegations as true.  But neither addresses factual matters that this Court requested the parties to address in an order it entered early in this case, and of course neither is conclusive with respect to matters of law.

[6]    Supplement to Verified Petition ¶ 3.  "Investors" is not defined or explained, though another document suggests it means shareholders.  *See* Verified Petition ¶ 5.  The JPLs have failed to provide any meaningful information concerning Basis Yield's "beneficial investors," the term they use to refer to the investors in the feeder funds and the ultimate equity stakeholders of Basis Yield.

[7]    What Fortis Prime Fund Solutions does as "administrator" is not described, however, nor do the JPLs say where its employees do whatever they do.

[8]    What Pac-Rim Investments does as "investment manager" is not described, however, nor do the JPLs say where its employees do whatever they do.

Citigroup,[9] and in remarks at a hearing by Citigroup's counsel,[10] but in any event was apparent to any observer—including the Court, which did not need a stakeholder's written submission to note the deficiency.[11]

Following the hearing on the JPLs' request for a preliminary injunction blocking the continuation of litigation and seizure of assets,[12] at which scheduling for the future hearing on recognition was also discussed, the Court issued an order with respect to the factual matters raised by the petition, and the matters that had not been addressed in it.[13] The Factual Matters Order provided, *inter alia*, that the Recognition Hearing would be an evidentiary hearing. It further provided that without being foreclosed from introducing any other evidence that the JPLs might consider relevant or helpful to the Court in making the recognition determination, the JPLs were to use best efforts to introduce

---

[9]     *See* Citigroup Response to Debtors' Request for Entry of Preliminary Injunction, dated Sept. 5, 2007 (ECF #10) at 2. Citigroup continued that without such information, neither creditors nor the Court could make any determination as to whether Basis has its "Center Of Main Interests" ("COMI") in the Cayman Islands (as necessary for recognition as a foreign main proceeding), or whether Basis maintains an establishment there (as necessary for recognition as a foreign nonmain proceeding). *See id.* at 3.

[10]    *See* Tr. of Hrg. of Sept. 6. 2007, at 13-15.

[11]    In supplements to their petition, the JPLs added allegations, which this Court likewise takes as true, that since filing their petition, the JPLs sought and obtained recognition from the High Court of Justice as Basis Yield's Joint Provisional Liquidators in England, where a "substantial amount" of Basis Yield's repurchase agreement counterparties are located, though they did not say that the English Court had recognized the Cayman Islands Proceeding as a foreign main proceeding. They also added allegations that they had sought and obtained an order in Australia which, while apparently not granting recognition, had granted an application for orders compelling certain parties to turn over, among other things, documents and funds in their possession. By affidavit, they stated that third parties, including creditors, trading counterparties, and/or investors of Basis Yield, had appeared in the proceedings pending in the Cayman Islands and Australia, but that no foreign court or party appearing before a foreign court has challenged the basis for the liquidation proceeding in the Cayman Islands.

[12]    Relief of this character was uncontroversial, and the Court granted the requested preliminary injunction (which carved out restrictions on rights parties might assert with respect to settlement payments, under repo agreements, and with respect to similar transactions), without prejudice to parties' litigation rights as to other issues in this case.

[13]    *See* Order re Upcoming Hearing on Motion for Recognition, dated Sept. 12, 2007 (ECF #16) (the "Factual Matters Order"). A copy follows this Decision as Appendix A.

evidence sufficient for the Court to make factual findings with respect to a fair number of specified matters—some or all of which would at least arguably be relevant to a determination as to whether the Cayman Islands were Basis Yield's COMI, or whether Basis Yield maintained an establishment there.

Thereafter, however, the JPLs sought and obtained permission from the Court to file a motion for summary judgment in advance of the recognition hearing. They elected to rely on the limited factual showing they had made, without introducing evidence of the character addressed in the Factual Matters Order. They now argue, in substance, that because Basis Yield's registered office is in the Cayman Islands, the Cayman Islands is presumed to be the COMI, under section 1516 of the Code, discussed below—and that with no objections having been filed, there is no evidence to the contrary. Thus, they argue, this Court *must* recognize the Cayman Islands Proceeding as a foreign main proceeding, as a matter of law.

<u>Discussion</u>

<u>I.</u>

<u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."[14]  The moving party bears the initial burden of showing

that the undisputed facts entitle it to judgment as a matter of law.[15]

In determining a summary judgment motion, it is well settled that the court should

not weigh the evidence or determine the truth of any matter, and must resolve all

ambiguities and draw all reasonable inferences against the moving party.[16]  A fact is

material if it "might affect the outcome of the suit under the governing law."[17]  An issue

of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."[18]

## II.

## Chapter 15 of the Code

Chapter 15 of the Bankruptcy Code was enacted in 2005 to implement the Model

Law on Cross-Border Insolvency (the "Model Law") formulated by the United Nations

Commission on International Trade Law ("UNCITRAL") in a process in which the

United States was an active participant.  The language of chapter 15 tracks the Model

Law, with some modifications that are designed to conform the Model Law with existing

United States law.[19]  Chapter 15 is fundamentally procedural in nature and does not

---

[14]     FED. R. CIV. P. 56(c), made applicable here by FED. R. BANKR. P. 9014 and Case Management
Order #1.

[15]     *See Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995); *Ferrostaal, Inc. v.
Union Pacific R.R. Co.*, 109 F. Supp. 2d 146, 148 (S.D.N.Y. 2000) ("The initial burden rests on
the moving party to demonstrate the absence of a genuine issue of material fact . . . .").

[16]     *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (holding that summary
judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact
to find for the nonmoving party"); *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 257 F.3d
256, 262 (2d Cir. 2001); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.
2001) ("We…constru[e] the evidence in the light most favorable to the non-moving party.").

[17]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18]     *Id.*

[19]     *In re Iida*, 377 B.R. 243, 256 (B.A.P. 9th Cir. 2007). *See also In re Tri-Cont'l Exch. Ltd.,* 349 B.R.
627, 631-32 (Bankr. E.D. Cal. 2006) ("*Tri-Continental Exchange*"); H.R. REP. NO. 109-31, at

constitute a change in the basic approach of United States law, which has long been one

of honoring principles of comity.[20]  Those principles appear, with other purposes of

chapter 15, in the first section of that chapter, section 1501.  As noted by Judge Drain of

this Court:

> Unique to the Bankruptcy Code, [chapter 15] contains a statement of purpose: "[t]he purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency … so as to provide effective mechanisms for dealing with cases of cross-border insolvency," with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses.[21]

## III.

## Recognition Under Chapter 15

Section 1509 of the Code[22] erects a structure in which the foreign representative

passes through the bankruptcy court for a recognition decision, the specified

---

105-07 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 167; Jay Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR. L.J. 713, 720 (2005) ("*Westbrook I*") (all cited in *Iida*).

[20]     *Iida*, 377 B.R. at 256; *Tri-Continental Exchange,* 349 B.R. at 725.

[21]     *In re SPhinX, Ltd*., 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) (Drain, J.) ("*SPhinX-Bankruptcy*"), *aff'd* 371 B.R. 10 (S.D.N.Y. 2007) (Sweet, J.) ("*SPhinX-District*").

[22]     Section 1509 provides, in relevant part:

> (a) A foreign representative may commence a case under section 1504 by filing directly with the court a petition for recognition of a foreign proceeding under section 1515.

> (b) If the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter—

consequences of which are that the foreign representative gains the capacity to sue and be

sued in United States courts and the authority to apply directly to a court in the United

States for appropriate relief, and that all courts in the United States must grant comity or

cooperation to the foreign representative.[23]

Congress provided that control of these questions would be concentrated in the

bankruptcy court;[24] after a grant of recognition by the bankruptcy court (and subject to

any limitations that the bankruptcy court may impose consistent with chapter 15 policy),

access, comity and cooperation in other United States courts is mandatory.[25]  Conversely,

if the bankruptcy court denies recognition, it may issue any appropriate order necessary

---

(1) the foreign representative has the capacity to sue and be sued in a court in the United States;

(2) the foreign representative may apply directly to a court in the United States for appropriate relief in that court; and

(3) a court in the United States shall grant comity or cooperation to the foreign representative.

…

(d) If the court denies recognition under this chapter, the court may issue any appropriate order necessary to prevent the foreign representative from obtaining comity or cooperation from courts in the United States.

…

(f) Notwithstanding any other provision of this section, the failure of a foreign representative to commence a case or to obtain recognition under this chapter does not affect any right the foreign representative may have to sue in a court in the United States to collect or recover a claim which is the property of the debtor.

[23]  *See Iida*, 377 B.R. at 257; *In re Loy*, 2007 WL 4532092, at *4 (Bankr. E.D. Va. Dec. 18, 2007) (following *Iida*).

[24]  *Iida*, 377 B.R. at 257.

[25]  *See* section 1509(b)(3) (if the bankruptcy court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with chapter 15, "a court in the United States shall grant comity or cooperation to the foreign representative").

In addition, one of the sections of the Code that addresses the effects of a recognition determination, section 1521, provides that after recognition, the foreign representative may petition the bankruptcy court for a host of relief available to a trustee under the United States Bankruptcy Code.  *See Loy*, 2007 WL 4532092, at *4.

to prevent the foreign representative from obtaining comity or cooperation from courts in

the United States.[26]  Thus a decision as to recognition is a serious matter.

Section 1502 of the Code sets forth definitions for use under chapter 15.  One of

them, section 1502(7), defining "recognition," provides that

> "recognition" means the entry of an order granting
> recognition of a foreign main proceeding or foreign
> nonmain proceeding under this chapter….

Section 1517 of the Code sets forth the requirements for an order granting

recognition, and sets forth a statutory directive that (subject to an exception inapplicable

here) when those requirements have been satisfied, a recognition order *shall* be entered.

Section 1517 provides, in relevant part:

> (a) Subject to section 1506,[[27]] after notice and a
> hearing, an order recognizing a foreign proceeding
> shall be entered if—
>
>> (1) such foreign proceeding for which
>> recognition is sought is a foreign main
>> proceeding or foreign nonmain proceeding
>> within the meaning of section 1502;
>>
>> (2) the foreign representative applying for
>> recognition is a person or body; and

---

26    *See* section 1509(d).

27    Section 1506 of the Bankruptcy Code provides that "[n]othing in this chapter prevents the court
from refusing to take an action governed by this chapter if the action would be manifestly contrary
to the public policy of the United States."  This provides a safety valve which permits denying
recognition in any such instances.  But as Judge Drain noted in *SPhinX-Bankruptcy*, *see* 351 B.R.
at 115 n.15, according to the legislative history, this provision "has been narrowly interpreted on a
consistent basis in courts around the world.  The word 'manifestly' in international usage restricts
the public policy exception to the most fundamental policies of the United States."  *See also In re
RSM Richter v. Aguilar (In re Ephedra Prods. Liab. Litigation)*, 349 B.R. 333 (S.D.N.Y. 2006)
(Rakoff, J.) ("*Ephedra Products Liability Litigation*") (recognizing that principle, and declining to
find a section 1506 exception with respect to proceedings in Canada for that reason).  There has
been no suggestion, or indication, that a section 1506 exception should be found to be applicable
here.  The Court emphasizes that the issues before the Court on this motion have nothing whatever
to do with the fairness of Cayman Islands law, or the fairness of the Cayman Islands courts.

      (3) the petition meets the requirements of
      section 1515.

    (b) Such foreign proceeding shall be recognized—

      (1) as a foreign main proceeding if it is
      pending in the country where the debtor has
      the center of its main interests; or

      (2) as a foreign nonmain proceeding if the
      debtor has an establishment within the
      meaning of section 1502 in the foreign
      country where the proceeding is pending.

Thus, in contrast to the jurisprudence that developed under section 304 that

emphasized discretion and flexibility (and that permitted U.S. judicial assistance for a

wide array of judicial insolvency proceedings abroad), the new recognition regime under

chapter 15 is procedurally quite rigid.[28]   To prevail on a petition for recognition, the JPLs

must satisfy each of the three requirements of section 1517(a) of the Code.

<u>IV.</u>

<u>Application to the Facts Here</u>

Here there is no question that the JPLs have satisfied two of the three

requirements of section 1517(a).  The JPLs are "persons" within the meaning of section

101(41)[29] and are "foreign representatives" within the meaning of section 101(24),[30] thus

---

[28]    *See* Jay Lawrence Westbrook, *Locating the Eye of the Financial Storm*, 32 BROOKLYN J. INT'L L.
1019, 1024 (2007) ("Westbrook II") ("The Model Law grants great discretion as to specific relief,
but imposes a fairly rigid procedural structure for recognition of foreign proceedings."); Daniel
Glosband, *SPhinX Chapter 15 Opinion Misses the Mark*, 25 AM. BANKR. INST . J. 44, 45
(December/January 2007) ("Glosband") ("[F]oreign proceedings are eligible for recognition only
if they meet the definitional requirements of either a foreign main proceeding or a nonmain
proceeding …."); *Bear Stearns*, 374 B.R. at 126 (quoting Westbrook II and Glosband).

[29]    Section 101(41) provides, in relevant part, "[t]he term 'person' includes individual . . ." 11 U.S.C.
§ 101.

[30]    Section 101(24) provides, in relevant part, "[t]he term 'foreign representative' means a person or
body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of
the debtor's assets or affairs or to act as a representative of such foreign proceeding." *Id*. at § 101.
Paragraph 1(e) of the Joint Provisional Liquidator Order issued in the Grand Court of the Cayman

complying with the requirements of section 1517(a)(2). Similarly, the JPLs have fulfilled the application prerequisites set forth in section 1515,[31] thereby comporting with the requirements of 1517(a)(3).

The motion then turns on whether the JPLs have complied with the requirements of section 1517(a)(1)—*i.e.*, whether the JPLs have shown that "such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502." And because the JPLs have sought summary judgment granting recognition as a *main* proceeding, the Court has the related questions as to whether, on the evidence now before the Court, they have shown the propriety of such as a matter of law, and without regard to any other facts—and whether the Court has the right to consider all of the facts when the JPLs elected not to put them forth, and instead elected to rely on a statutory presumption embodied in section 1516 of the Code, discussed below.[32]

A.      *Requirements of Sections 1517 and 1502*
        *for a "Main Proceeding"*

A "foreign main proceeding" is defined, in chapter 15's Definitions section, section 1502(4), as a "foreign proceeding pending in the country where the debtor has the

---

Islands on August 28, 2007 clearly designates the petitioners as representatives of the Cayman Proceeding for the purposes of obtaining relief under Chapter 15.

[31]    Section 1515(b) requires that "[a] petition for recognition be accompanied by – (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative; (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative." *Id*. at § 1515(b).

[32]    In a conference call with the Court, the JPLs sought and obtained permission to file for summary judgment, and to rely on the presumption in lieu of producing the evidence that had been required under the Factual Matters Order. That excuses them from their earlier obligation to comply with the Factual Matters Order. But it does not excuse them from the *consequences* of having failed to provide additional evidence. Since, as the Court now holds, the JPLs here cannot rely on the presumption as a substitute for real evidence, the JPLs will have to comply with the Factual Matters Order when they continue to seek recognition.

center of its main interests" (referred to in fn. 9 above, and elsewhere, as the "COMI").[33]

The Bankruptcy Code does not define COMI, and does not prescribe the type of evidence

courts should consider in a COMI analysis.

However, prior courts have looked to an array of factors that could be probative in

this regard, including: "the location of the debtor's headquarters; the location of those

who actually manage the debtor (which conceivably could be the headquarters of a

holding company); the location of the debtor's primary assets; the location of the

majority of the debtor's creditors or of a majority of the creditors who would be affected

by the case; and/or the jurisdiction whose law would apply in most disputes."[34]  While

certainly not exhaustive or all necessarily applicable in this or any other case, these

objective factors are indicative of the facts a court might find relevant in a COMI

determination.[35]

As importantly or more so, as Judge Lifland, one of the authors of the Model Law

and chapter 15,[36] observed:

> [T]he use of the concept "where the debtor has the
> centre of its main interests" as the determinant that
> a foreign proceeding is a "main" proceeding was
> modeled on the use of that concept in the European
> Union Convention on Insolvency Proceedings ("EU
> Convention") that was already in the process of

---

[33]    By contrast, a "foreign nonmain proceeding" is defined as any other proceeding "pending in a
country where the debtor has an establishment."  *Id.* at § 1502(5).  And "establishment" is defined
as "any place of operations where the debtor carries out a nontransitory economic activity."  *Id.* at
§ 1502(2).  Though the JPLs seeks recognition of the Cayman Islands Proceeding as a nonmain
proceeding as an alternative prayer for relief in their petition, they are not seeking recognition of it
as a nonmain proceeding under this motion for summary judgment.

[34]    *SphinX-Bankruptcy*, 351 B.R. at 117.  *See also Bear Stearns*, 374 B.R. at 128.

[35]    The Court asked for evidence as to these and other matters, see page 5, *supra*, while making it
clear that the JPLs would not be limited to evidence of the type the Court requested.

[36]    *See Bear Stearns*, 374 B.R. at 127 n.3.

being adopted when UNCITRAL drafted the Model Law.[37]

> In the regulation adopting the EU Convention, the COMI concept is elaborated upon as "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties."[38]

This generally equates with the concept of a "principal place of business" in United States law.[39]

In this case, however, and significantly, none of the papers filed by the JPLs to date have addressed, in any meaningful way, any of those factors. The silence is deafening. The JPLs' conspicuous failure to try to establish, or even plead, facts supporting the existence of a main proceeding, even after the Citigroup submission and the Court's own questions in this regard, makes any reasonable observer wonder why. As importantly or more so, the failure of Citigroup ultimately to file an objection does not make the issues Citigroup noted go away—and, as noted, the issues were obvious in any event.

Thus, the Court has questions that need to be answered, unless the JPLs are legally excused from answering them.

B.  *Use of Section 1516*

As a proxy for the submission of evidence, the JPLs rely on section 1516(c) of the Code. That section provides:

---

[37]    *Id.* at 129.

[38]    *Id.* (quoting Council Reg. (EC) No. 1346/2000, ¶ 13). *See also* Case 341/04, *Bondi v. Bank of America, N.A.* (*In re Eurofood IFSC Ltd.*), 2006 E.C.R. I-3813, p. I8-I9, ¶ 32, 2006 WL 1142304 (E.C.J. May 2, 2006).

[39]    *See In re Tri-Continental Exchange*, 349 B.R. at 633-34; *Bear Stearns*, 374 B.R. at 129.

> In the absence of evidence to the contrary, the
> debtor's registered office, or habitual residence in
> the case of an individual, is presumed to be the
> center of the debtor's main interests.

The JPLs argue that in the absence of any objections or facts in the record that could put in question the location of Basis Yield's COMI, they are entitled to this presumption. Therefore, their argument continues, if the other recognition requirements have been met, summary judgment recognizing the Cayman Islands Proceeding—and, indeed, as a foreign main proceeding—*must* be granted.

But the Court cannot endorse that approach, and find that that there is a section 1517 qualification as a matter of law, for two separate reasons. Here there is evidence to the contrary. And the Court's power to examine the facts underlying a request for recognition under section 1517, and to inquire under Fed. R. Evid. 614, cannot be sidestepped or eliminated by elections to not plead or introduce the relevant facts.

### 1. *Evidence to the Contrary*

First, the Court here sees enough "evidence to the contrary"—organization of the Debtor under a Cayman Islands statute that raises red flags as to whether that jurisdiction could be the Debtor's COMI— to decline to use a section 1516 presumption as a substitute for actual evidence. Among the few facts that have been put forward here is the fact that Basis Yield was incorporated as an "exempted company" under section 193 of the Caymans Companies Law.[40] Concerns on the part of the Court arise by reason of what section 193, and other sections of the Cayman Companies Law relating to "exempted companies," provide.

Section 193 of the Cayman Companies Law provides:

---

[40] *See* Akers Decl. ¶ 2.

-15-

> An exempted company shall not trade in the Islands
> with any person, firm or corporation except in
> furtherance of the business of the exempted
> company carried on *outside* the Islands:
>
> > Provided that nothing in this section shall be
> > construed so as to prevent the exempted company
> > effecting and concluding contracts in the Islands
> > and exercising in the Islands all of its powers
> > necessary for the carrying on of its business *outside*
> > of the Islands.[41]

As significantly or more so, section 184 of the Cayman Companies Law provides:

> A proposed exempted company applying for
> registration as an exempted company shall submit
> to the Registrar a declaration signed by a subscriber
> to the effect *that the operation of the proposed
> exempted company will be conducted mainly
> outside the Islands.*[42]

Without more in the way of facts and explanation, there is at least a question in
the Court's mind as to whether this exempted company, organized under section 193, and
whose representative at least seemingly was required to sign a declaration of the type
required under section 184, would have its COMI in the Cayman Islands. If the
"operation of the … exempted company will be conducted mainly outside the Islands,"
consistent with the representation required to be made under section 184, is it clear, as a
matter of law, in the absence of any additional facts, that the exempted company's
principal place of business[43] nevertheless is in the Islands? The Court does not now rule

---

[41]    Emphasis added. Although there is also a 2007 Revision to the Cayman Companies Law, it
appears that neither section 193 nor sections 184 and 182, discussed below, was amended.

[42]    Emphasis added. To the same effect, though less specific and arguably saying something slightly
different, is section 182 of the Cayman Companies Law:

> Any proposed company applying for registration under this
> Law, *the objects of which are to be carried out mainly outside
> the Islands,* may apply to be registered as an exempted
> company.

[43]    Or COMI, to the extent that might be regarded as different.

out circumstances under which Basis Yield could engage in activities in the Cayman

Islands sufficient to make a COMI showing and still comply with the requirements

applicable to exempted companies.[44]  But the facts that would support such have not been

shown here.  While the Court expresses no view on the relevance of section 193 to

recognition of a nonmain proceeding (an issue not presented on this motion), it is hardly

surprising to this Court that in *Bear Stearns*, on the facts there presented, Judge Lifland

considered recognition as a main proceeding of a Cayman Islands insolvency for an

"exempted company" organized under section 193 to be inappropriate.[45]

As Judge Klein observed in *Tri-Continental Exchange*:

> [I]f the foreign proceeding is in the country of the
> registered office, and if there is evidence that the
> center of main interests might be elsewhere, then
> the foreign representative must prove that the center
> of main interests is in the same country as the
> registered office.[46]

Thus, unless the Court is bound, by section 1516 of the Code or otherwise, to

close its eyes to these issues, the Court needs evidence relevant to the Debtor's COMI,

and any main proceeding determination.  This is not to say that the JPLs would be unable

---

[44]     Likewise, the Court is not now holding that compliance with section 193 and the related
provisions of the Cayman Companies Law precludes, in all cases, a judicial determination that the
exempted company's COMI is in the Cayman Islands.

[45]     *See Bear Stearns*, 374 B.R. at 130-31 & n.13.  Similarly, while Judge Drain in *SPhinX-Bankruptcy*
ultimately based the denial of main proceeding recognition on the petitioners' improper purpose,
he manifestly did not rule that a showing of a Cayman Islands COMI had been made in that case.
To the contrary (albeit with a more extensive factual record), he observed that "important
objective factors point[ed] to the Sphinx Funds' COMI being located outside the Cayman
Islands." 351 B.R. at 119.  *See also* Judge Sweet's analysis in *SPhinX-District*, 371 B.R. at 19
("Based on the facts found, the Bankruptcy Court rightly concluded that objective factors
ascertainable to third parties pointed to the SPhinX Funds' COMI not being located within the
Cayman Islands, thereby sufficiently rebutting the statutory presumption.").

[46]     349 B.R. at 635.

to make the necessary showing (or the lesser showing required for a nonmain proceeding determination); it is only to say that the Court needs more information.[47]

### 2. Court's Power to Examine

Second, the Court has the power to satisfy itself that the requirements for recognition under section 1517 have been satisfied, and has a right like any other federal court to inquire under Fed. R. Evid. 614. This or any other federal court would have the same power to inquire, if it were so advised, if the JPLs had been even less forthcoming in putting forward relevant facts, and had not stated that Basis Yield is an exempted company under Cayman Islands law. The court's power to ascertain the facts cannot be sidestepped by failures to object. Nor can it be sidestepped by elections not to plead or introduce inconvenient facts.

Textual analysis—where the Court normally starts in any matter of statutory interpretation—is not inconsistent with this conclusion, but is inconclusive. Section 1517 sets forth substantive requirements that must be satisfied. But sections 1517 and 1516 are silent as to whether or not the court's power to ascertain the facts incident to a section 1517 determination is revoked by parties' failures to object—though section 1517 plainly does *not* say that consent is a substitute for the substantive requirements of that section, or that parties' failures to object deprive the court of the power federal courts customarily exercise when determining whether the requirements of statutes have been satisfied.

Similarly, section 1516(c) would have been clearer (and truer to its stated purpose, see below) if it provided that in the absence of evidence to the contrary, the court "is entitled to presume" that the debtor's registered office is the COMI—rather than

---

[47]    The Court notes that none of *Tri-Continental Exchange*, *SPhinX-Bankruptcy*, or *Bear Stearns* involved an effort to secure recognition (as a main or nonmain proceeding) on summary judgment, and that each was decided only after extensive factual presentation and analysis.

providing that the registered office "is presumed" to be the COMI.  But neither does

section 1516 say that in the absence of objection, the presumption is irrebuttable, or that

the court "shall" presume that the registered office is the COMI—which is the normal

way of establishing a statutory directive that is binding on a judge.  Significantly, each of

sections 1517(a), 1517(b), and 1517(c), describing the underlying recognition process, *do*

employ the word "shall."  And section 1516 does not say, at least expressly, that it trumps

the need even to *set forth in a petition* the facts underlying the prima facie case required

under section 1517(a).

But while textual analysis does not resolve the relevant questions, the legislative

history, caselaw, and the published views of commentators—several of whom, like Judge

Lifland, were drafters of the Model Law and chapter 15—answer those questions clearly

and consistently.  All make clear that in making a section 1517 determination, the Court

is not bound by parties' failures to object, and that the section 1516 presumption need not

be blindly followed.

### (a) Do Failures to Object Bind the Court?

That failures to object is not conclusive is established by, at the least, legislative

history and caselaw.  One of the sources that a United States court at least *may* look to, if

it is not also *obliged* to treat as persuasive,[48] is the *Guide to Enactment of the UNCITRAL*

*Model Law on Insolvency* (the "*Guide*"),[49] that was promulgated in connection with the

---

[48]    *See Bear Stearns*, 374 B.R. at 129 (a United States court "may look to" the Guide as persuasive);
H.R. REP. NO. 109-31(I), at 106 n.101, *as reprinted in* 2005 U.S.C.C.A.N. 169 n.101 (the Guide
"should be consulted for guidance as to the meaning and purpose of [Chapter 15's] provisions");
*Ephedra Products Liability Litigation*, 349 B.R. at 336 (quoting the House Report, and noting that
the House Judiciary Committee, in enacting Chapter 15, specifically indicated that the *Guide*
should be consulted); *Tri-Continental Exchange*, 349 B.R. at 633 (the *Guide* is one of the sources
that a United States Court is "obliged" to take as persuasive).

[49]    U.N. Gen. Ass., UNCITRAL 30th Sess., U.N. Doc. A/CN.9/442 (1997).

approval of the Model Law.  As provided in the *Guide*, in its discussion of Article 16 of

the Model Law (which sets forth the presumption implemented in the United States in the

form of section 1516):

> Article 16 establishes presumptions that allow the
> court to expedite the evidentiary process; at the
> same time they do not prevent, in accordance with
> the applicable procedural law, calling for or
> assessing other evidence if the conclusion suggested
> by the presumption is called into question *by the
> court or* an interested party.[50]

Thus the *Guide* does not require that the presumption be called into question by an

interested party.  To the contrary, it states, explicitly, that the conclusion suggested by the

presumption may likewise be "called into question by the court."

Consistent with that, in *Bear Stearns*, Judge Lifland held that parties' failures to

object were not binding upon him in determining that the requirements of section 1517

were satisfied.  In connection with the requests for recognition (as main or, alternatively,

nonmain, proceedings) in that case, one group of parties filed an ambiguous statement

with respect to choice of law issues, and no other party filed a response or objection to

the relief requested.  Nevertheless, Judge Lifland found that not to be conclusive.  After

expressly noting the lack of objection, he continued:

> However, recognition under section 1517 is not to
> be rubber stamped by the courts. This Court must
> make an independent determination as to whether
> the foreign proceeding meets the definitional
> requirements of sections 1502 and 1517 of the
> Bankruptcy Code.[51]

Further on in *Bear Stearns*, Judge Lifland expanded on that:

---

[50]     *Guide* ¶ 122 (emphasis added).

[51]     374 B.R. at 126.

> The Petitioners basically argue *that because no objections have been filed* and the Funds' registered offices are in the Cayman Islands, this Court should recognize the Foreign Proceedings as main proceedings.  In other words, the Petitioners contend that this Court should accept the proposition that the Foreign Proceedings are main proceedings because the Petitioners say so and *because no one else says they aren't.  This contention must be rejected*.[52]

Though Judge Lifland noted that there was dicta in *SPhinX-Bankruptcy*—relied upon the JPLs here[53]—suggesting that if the parties in interest had not objected to the Cayman Islands proceeding being recognized as main, recognition would have been granted, Judge Lifland disagreed with it: "[t]o the extent that non objection would make the recognition process a rubber stamp exercise, this Court disagrees with the dicta in the *SPhinX* decision."[54]

Finally, commentators—including members, along with Judge Lifland, of the Model Act and chapter 15 drafting groups—have (so far as this Court can tell, uniformly) endorsed Judge Lifland's analysis, and/or agreed with the view, expressed by the *Guide* and Judge Lifland, that the court always has the power to make its own determination on qualification under section 1517, notwithstanding the presence of section 1516 and the absence of an actual objection.[55]

---

[52]    *Id.* at 129 (footnote omitted; emphasis added).

[53]    *See* JPLs Br. at 7, 10.

[54]    374 B.R. at 130.  With the benefit of the extensive discussion of this topic that has followed the earliest analysis of it a year and a half ago, this Court concurs with Judge Lifland's analysis, for the reasons stated above and below.

[55]    *See* Glosband, *supra* note 28, at 84; Westbrook II, *supra* note 28, at 1033-34; Kathy Yeatter, *Judicial Vagaries and Their Potential Impact on the Valuation of Distressed Debt*, 26 AM. BANKR. INST . J. 50, 52, 53 (Nov. 2007).

-21-

Moreover, the procedural posture in the instant case is relevant to the determination of whether a lack of objections binds the Court.  A court may properly deny a motion for summary judgment, even where no opposing evidentiary matters are presented, when the movant bears the burden of proof at trial and fails to establish the absence of genuine issues of fact.[56]   As discussed in more detail below, both caselaw and legislative history confirm that the burden of proof as to each element of a petition for recognition is on the foreign representative.[57]   The absence of objections to recognition here neither obviates the JPLs' evidentiary burden nor prevents the Court from concluding on the current record that genuine issues of material fact exist so as to prevent determination as a matter of law.

### (b) Is the Court Bound by the Section 1516 Presumption?

Finally, the Court determines that the section 1516 presumption exists for the purposes of speed and convenience, and to save stakeholders costs in straightforward cases, but does not tie the hands of a court to examine the facts more closely in any instances where the court regards the issues to be sufficiently material to warrant further inquiry.

Judge Lifland expressly so held in *Bear Stearns*.[58]   And Judges Drain and Sweet noted the speed and convenience purpose in *SPhinX-Bankruptcy* and *SPhinX-District*.  As

---

[56]    *See, e.g.*, *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3rd Cir. 1992) ("However, where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the … court should deny summary judgment even if no opposing evidentiary matter is presented.").

[57]    *See Tri-Continental Exchange*, 349 B.R. at 635.

[58]    *See* 374 B.R. at 129 (noting the *Eurofood* observation that the presumption may be overcome "particular[ly] in the case of a 'letterbox' company not carrying out any business" in the territory of its registered office, and the provisions of the *Guide*, expressly noting that the presumption does not prevent calling for evidence if the conclusion suggested by the presumption is called into question by the court).

Judge Sweet stated in *SPhinX-District*, quoting Judge Drain's *SPhinX-Bankruptcy* observations approvingly:

> As recognized by the Bankruptcy Court: "The legislative history [ ] indicates that the statutory presumption of § 1516(c) may be of less weight in the event of a serious dispute: '[t]he presumption that the place of the registered office is also the center of the debtor's main interest is included for speed and convenience of proof where there is no serious controversy.'"[59]

As previously noted, the Guide explains that the Model Act's presumption, embodied in the U.S. Bankruptcy Code's section 1516, does "not prevent, in accordance with applicable procedural law, *calling for* or assessing other evidence if the conclusion suggested by the presumption is called into question *by the court* or an interested party."[60] The court's ability to "call[] for" other evidence is expressly noted in the *Guide*. And as noted by the European Court of Justice, the COMI presumption may be overcome "particular[ly] in the case of a 'letterbox' company not carrying out any business in the territory of the Member State in which its registered office is situated."[61]

A presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.[62] Section 1516(c) merely creates a rebuttable presumption and does not shift the burden of proof in

---

[59]  *SPhinX-District*, 371 B.R. at 18 (quoting *SPhinX-Bankruptcy*, 351 B.R. at 117, which in turn had quoted the House Report, H.R. REP. NO. 109-31, pt. 1, at 112-13 (2005)).

[60]  Emphasis added.

[61]  *See Eurofood*, *supra* note 38, at ¶¶ 34, 35; *see also SPhinX-District,* 371 B.R. at 19 (same, citing *Eurofood*).

[62]  FED. R. EVID. 301.

supporting a petition for recognition.[63]   As Judge Klein noted in *Tri-Continental Exchange*, the word "proof" in subsection (3) was changed to "evidence" to make it clearer using United States terminology that the ultimate burden is on the foreign representative.[64]

As Judge Klein also noted in *Tri-Continental Exchange,* the House Report for the chapter 15 amendments provided:

> Although sections 1515 and 1516 are designed to make recognition as simple and expedient as possible, the court *may hear proof on any element stated*. The ultimate burden as to each element is on the foreign representative, although the court is *entitled to* shift the burden to the extent indicated in section 1516.[65]

Thus the court is "entitled to" shift the burden to the extent indicated in section 1516, but does not need to, if it is uncomfortable that a prima facie case has been shown.

Finally, the Court's right to call for other evidence is confirmed not just by the *Guide*, but also by the Federal Rules of Evidence.  Rule 614 provides, in relevant part:

> (a) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

> (b) Interrogation by court. The court may interrogate witnesses, whether called by itself or by a party.

---

[63]   *See Tri-Continental Exchange*, 349 B.R. at 635 ("The registered office, however, does not otherwise have special evidentiary value and does not shift the risk of nonpersuasion, i.e. the burden of proof, away from the foreign representative seeking recognition as a main proceeding.").

[64]   349 B.R. at 635 n.8.

[65]   *Id.* (quoting H.R. REP. NO. 109-31, at 112-13, *as reprinted in* 2005 U.S.C.C.A.N. 88, 175 (emphasis added).

Subsection (a) of Rule 614 is particularly relevant. Just as the *Guide* says that the

presumption does not prevent "calling for or assessing other evidence if the conclusion

suggested by the presumption is called into question by the court," Rule 614(a) gives the

court the right, on its own motion, to *call* witnesses. Granting summary judgment here

would deny the Court that right. As the Committee Notes with respect to Rule 614(a)

provide, "the authority of the judge to call witnesses is well established." The court's

right to call witnesses, on its own motion, ensures that "the judge is not imprisoned

within the case as made by the parties."[66]

The showing here can be compared and contrasted to the showings that have been

made in all of the other chapter 15 cases that have come up on this Court's watch—in all

of which the Court granted the requested recognition, or would in the absence of

objection.[67] As a prototypical example of the kind of petition that would be satisfactory

in the absence of an objection, the petition for *ING Re* states that the company, a

reinsurance company, "is headquartered in London, England"; "its assets are primarily

---

[66] FED. R. EVID. 614 Committee Notes for 1972 Proposed Rules.

[67] *See In re Daewoo Corp.*, 06-12242 (REG) (Korean insolvency proceeding for the flagship company of the Daewoo Group, one of the largest industrial conglomerates in Korea, recognized as foreign main proceeding); *In re AXA Insurance UK PLC*, 07-07-12110 (REG); *Ecclesiastical Insurance Office PLC*, 07-12111 (REG); *Global General and Reinsurance Co. Ltd*, 07-12112 (REG); *MMA IARDD Assurance Mutuelles*, 07-12113 (REG) (in jointly administered case, English insolvency proceeding for three UK and one non-UK company, all writing reinsurance business in the London market, recognized as main proceeding for the UK companies, and nonmain proceeding for the non-UK company, where alleged, with respect to the UK companies, that "their principal place of business is the UK," and alleged, for the nonmain proceeding recognition for the non-UK company, that it transacted insurance business in England and maintained an establishment there); *In re Europaische Ruckversicheruns-Gesellschaft in Zurich (European Reinsurance Co. of Zurich)*, 06-13061 (REG) (English insolvency proceeding for Swiss reinsurance company doing business in the London market recognized as nonmain proceeding). In one other chapter 15 case before this Court, *In re ING Re (UK) Ltd.*, 08-10018 (REG) ("*ING Re*"), a recently filed case with a petition stating that the debtor is headquartered in London and has written insurance in the London market, the matter of recognition is pending. Parties have not yet been heard on whether there is any dispute as to those allegations, or as to whether there are any facts suggesting that its English insolvency proceeding should not be regarded as a main proceeding.

located in England"; "[t]he Company began writing business in the London Market in July 1997"; and "[t]he reinsurance contracts that will be affected by the Scheme of Arrangement were written predominantly from the Company's headquarters in London."[68]  Simple allegations of this type would normally be more than sufficient to give a court comfort that reliance on the section 1516 presumption is appropriate, in the absence of an objection and/or any other evidence to the contrary.  Of course, in light of the allegations that have been typical in the other section 1517 petitions that this Court has seen, the omissions in this case were particularly striking.

Thus, while recognition *may* be granted under a section 1516 presumption (and often that will be appropriate and in the joint interests of parties and the court), the Court cannot agree that it *must* be granted.  The JPLs inappropriately transform a labor saving presumption in instances where the basis for recognition is apparent to one that would tie the hands of a court to inquire into the actual facts, in cases where the circumstances require more scrutiny—making recognition turn not on compliance with the requirements of section 1517, but on the happenstance of whether parties might or might not object.  Such a result would be exactly *inconsistent* with one of chapter 15's expressly stated purposes, providing predictability to the financial community.[69]

## Conclusion

This Court shares the attitude of hospitality and willingness to grant comity that underlies the great bulk of section 304 and chapter 15 jurisprudence, and feels no differently with recognition requests under section 1517.  And plainly section 1516

---

[68]    *See ING Re* Petition at ¶¶ 5, 6, 10.

[69]    *See* Bankruptcy Code section 1501 (including, as one of chapter 15's objectives "greater legal certainty for trade and investment"); Westbrook II, *supra* note 28, at 1019 (noting the importance of predictability in making COMI determinations).

provides for a time and labor saving process that is useful.  In most cases, the fact that a

jurisdiction is a debtor's COMI (or a place where it has an establishment) will be

obvious, or will appear from facts set forth in the petition or an accompanying affidavit—

especially if members of the bar wishing to invoke section 1516 simply include basic

statements, in the petition or an affidavit, of the type that other petitioners have provided

to this Court.  When facts showing a COMI are already known or have been put forth,

and there is no opposition, the Court would hardly suggest that further evidence with

respect to recognition would be necessary; it would be in exactly such a circumstance that

the section 1516 presumption would be very useful, and would rarely, if ever, be second-

guessed.  In fact, the Court would be saddened if the pendulum swung too far the other

way, depriving parties of the use of the section 1516 presumption when allegations in

their petitions or statements in their affidavits foreclose any real controversy.

But the decision necessarily must remain with the court, which may be satisfied

with reliance on the presumption or not, consistent with its ultimate responsibility, and

power, to determine that the requirements of sections 1502 and 1517 are satisfied.

In this case, genuine issues of material fact exist as to the location of Basis

Yield's COMI.  While the Court does not in any way rule out the possibility that facts

could be adduced at an evidentiary hearing sufficient to make a case for entitlement to

recognition, the JPLs are not now entitled to recognition as a matter of law.

Summary judgment is denied.  Consistent with the requirements of section

1517(c), the Court will hold the evidentiary hearing on the matter of recognition at the

earliest practical time.  The JPLs' evidentiary presentations shall be made in accordance

with Case Management Order #1, subject to an adjustment of time with respect to the

submission of direct testimony affidavits; they will be submitted early enough to permit

the Court to advise the JPLs of any desire to call witnesses whose testimony has not

already been set forth by affidavit.  Duties under the Factual Matters Order are now

reinstated.

       SO ORDERED.

Dated:  New York, New York            *s/Robert E. Gerber*
        January *16*, 2007             United States Bankruptcy Judge